

U.S. Department of Justice

United States Attorney
Eastern District of New York

DMP/CRH:AS
F.#2024R00396

271 Cadman Plaza East
Brooklyn, New York 11201

May 7, 2024

By ECF and Email

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Halima Salman
                   Criminal Docket No. 24-MJ-350

Dear Judge Levy:

        The defendant Halima Salman is scheduled to be arraigned today on the above-referenced complaint, which charges the defendant with receiving military-type training from the Islamic State of Iraq and al-Sham ("ISIS"), a foreign terrorist organization, in violation of 18 U.S.C. § 2339D.  See generally Compl.  As explained in greater detail below, the evidence establishes that the defendant spent years with her family in Syria, where she was trained to use an assault rifle and received ammunition from an ISIS military battalion.  For the reasons set forth below, the government respectfully submits that the Court should enter an order of detention pending trial, because there is a presumption of detention due to the nature of the charge and because the defendant presents both a danger to the community and a risk of flight.

I.       Relevant Facts[1]

    A.      ISIS

        ISIS is a designated foreign terrorist organization[2] that has claimed credit for numerous terrorist activities as part of ISIS's broader goal of forming an Islamic state or

---

[1]     Detailed herein is a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant.  See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (holding that the government is entitled to proceed by proffer in detention hearings).

[2]     On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq, then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global

"caliphate" in Iraq, Syria, and beyond. Since 2013, ISIS supporters have claimed responsibility for numerous terrorist activities, including multiple attacks against Americans in the United States and against Westerners abroad. ISIS supporters have claimed responsibility for several attacks in the United States, including: the May 2015 shooting in Garland, Texas, at an exhibition featuring cartoons of the Prophet Mohammed; the December 2015 shooting in San Bernardino, California, at the Inland Regional Center; the June 2016 shooting in Orlando, Florida, at the Pulse nightclub; the October 2017 West Side Highway truck attack; and the December 2017 attempted bombing of the 42nd Street-Port Authority Bus Terminal. ISIS supporters have also continued to publicly express their desire to continue to target and attack the United States and other Western nations.

ISIS and its supporters have also claimed responsibility for many violent attacks in Europe and South Asia. Most recently, on March 22, 2024, ISIS - Khorasan, a regional branch of ISIS active primarily in Afghanistan and Pakistan, took responsibility for the terrorist attack at the Crocus City Hall concert venue in Moscow, Russia, an attack that killed over 130 people and injured hundreds more. It was the deadliest terrorist attack in Europe since 2004. On March 28, 2024, ISIS released a message calling for lone-wolf attacks in, among other places, the United States.

During the relevant time period, ISIS had a physical presence in, among other places, Syria. ISIS sought to use Syria as a base of operations for its terrorist activities and to impose its strict version of Islamic Law on its residents. Moreover, numerous foreign fighters seeking to join ISIS traveled to Syria in order to join the "caliphate" proclaimed by ISIS, which at various times existed in Iraq and Syria, and other locations in the Middle East and Africa. Because of the importance of foreign fighters to ISIS's operations, ISIS committed significant resources to recruitment of foreign fighters, including those with ties to the United States.

    B.    <u>The Defendant's Military Training With ISIS</u>

On or about October 23, 2016, the defendant, then 17 years old, departed John F. Kennedy International Airport for Moscow, Russia with some members of her family. <u>See</u> Compl. ¶ 7. The defendant then traveled to Turkey and, together with members of her family, traveled into an ISIS-controlled area of Syria in late 2016 or early 2017. <u>Id.</u> ¶ 9. When they reached Syria, another member of the defendant's family (identified in the Complaint as "Individual-2") received military-type training from ISIS and performed "ribat," or guard-duty

---

Terrorist entity under section 1(b) of Executive Order 13224. <u>See</u> Compl. ¶ 4. On May 15, 2014, the Secretary of State amended the designation of al-Qa'ida in Iraq as a FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13244 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. <u>Id.</u> ¶ 5. The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham ("ISIS"), the Islamic State of Iraq and Syria ("ISIS"), ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. <u>Id.</u> On or about September 21, 2015, the Secretary of State added the following aliases to the FTO listing: Islamic State, ISIL and ISIS. To date, ISIS remains a designated FTO. <u>Id.</u>

type services, for ISIS. Id. ¶ 10. After turning 18, the defendant married a military-age male individual and member of ISIS (identified in the Complaint as "Individual-3"). Id. ¶ 14.

The evidence establishes that the defendant subsequently received military-type training herself from ISIS. For example, a file from a mobile device associated with Individual-3 depicts an Arabic language document that purports to have been issued by the ISIS "Diwan al-Jund," ("Department of Soldiers"). Id. ¶ 22. The document states, in sum and substance, that "Umm al-Khattab al-Muhajir" is the spouse of Individual-3 and that "Umm al-Khattab al-Muhajir" has completed her military training successfully and is qualified to receive ammunition for the "AK47" already in her possession. Id. ¶ 23. The letter is signed with a signature stamp indicating that it is issued by an ISIS unit called the "Nusaybah bint-Ka'ab," also referred to as the "Nusaybah Katiba" or the "Katiba Nusaybah." Id. ¶ 23. The Nusaybah Katiba was an ISIS military battalion or unit composed solely of female members of ISIS, principally those who were or had been married to male ISIS fighters. Id. ¶ 25. Members of the Nusaybah Katiba received training on the use of various weapons, including AK-47 style assault rifles. Id.

During a November 2023 interview in Syria by U.S. law enforcement, the defendant waived her Miranda rights and admitted that her "kunya" (or pseudonym) while in Syria was "Um Khattab," and that she was married to Individual-3. Id. ¶¶ 14-15. Moreover, on May 6, 2024, before the defendant boarded a flight bound for the United States, she was interviewed by FBI agents after waiving her Miranda rights. During this interview, the defendant confirmed that the document refers to her, that the document refers to her by her kunya and her husband by his kunya, but then denied receiving military training.

Additional evidence reflects the defendant's association with ISIS and receipt of military-style training. Image and video files on the mobile device show the defendant in pictures with an ISIS flag in the background, with an AK-47 in the background, and walking while brandishing what appears to be an AK-47 style assault rifle. Id. ¶¶ 26-27. During the May 6, 2024 Mirandized interview, the defendant confirmed that multiple pictures from the mobile device, including pictures with the ISIS flag in the background, were of her.

In early 2019, the defendant was captured by or surrendered to forces opposed to ISIS in or around Baghouz, Syria. Id. ¶ 11. When the defendant was interviewed by U.S. law enforcement in November 2023 about her conduct while in ISIS-controlled territory, she falsely claimed that she did not attend any type of training, was never assigned to a "Katiba," never owned a weapon, and was never involved in any ISIS activities. Id. ¶ 16. The defendant provided further false information during her May 6, 2024 interview when she denied receiving military training although admitting the training certification refers to her.

II.   Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are required to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and

3

convincing evidence.  See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).  A finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  See 18 U.S.C. § 3142(g).

For certain offenses, including the military training charge contained in the complaint, the law presumes that there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community.  See 18 U.S.C. § 3142(e)(3)(C) (applying a rebuttable presumption of detention for "an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed.").  The offense with which the defendant is charged is listed in Section 2332b(g)(5)(B) and carries a maximum term of 10 years, thus triggering the presumption of detention.

This presumption may be rebutted by the defendant, provided the defendant is able to present evidence that she is neither a danger nor a risk of flight.  See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).  Even upon such a showing, however, the presumption in favor of detention "does not disappear entirely, but remains a factor to be considered among those weighed[,]" id., because it "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial" and "represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." United States v. Stone, 608 F3d 939, 945-946 (6th Cir. 2010) (internal quotation marks and citation omitted) (ellipsis in original).

III.    The Court Should Enter an Order of Detention for the Defendant

As set forth above, there is a presumption that no condition or combination of conditions will permit the defendant to be released on bond.  Moreover, the factors to be considered in the detention analysis show that the defendant presents both a significant danger to the community and a substantial risk of flight if released on bond.  Accordingly, the Court should enter an order of detention pending trial.

A. <u>The Law Presumes that the Defendant Should Be Detained Pending Trial</u>

The defendant is charged with an offense that triggers a presumption of detention. Specifically, the facts detailed in the complaint establish probable cause to believe that the defendant has committed a violation of 18 U.S.C. § 2339D, an offense which is listed in 18 U.S.C. § 2332b(g)(5)(B), and for which the maximum authorized term of imprisonment is 10 years. Thus, in this case, the law presumes that there is no condition or combination of conditions of release that will reasonably assure the safety of the community or the defendant's appearance as required. <u>See</u> 18 U.S.C. § 3142(e)(3)(C).

B. <u>The Nature and Circumstances of the Offense Charged</u>

The charged offense is extremely serious. The defendant is charged with receiving military-type training from ISIS, a terrorist organization that is responsible for numerous acts of violence, including attacks on international targets, including in the United States. In the last two months, ISIS has also called for additional attacks on targets, including within in the United States. The defendant, as a woman, was not conscripted to receive military training or join ISIS's female battalion; rather, the defendant sought out training after she turned 18 years old and after marrying an ISIS fighter.

In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is, among others, a Federal crime of terrorism. <u>See</u> 18 U.S.C. § 3142(g)(1). The charged offense unquestionably falls within this category, confirming that Congress viewed these crimes as sufficiently serious to factor against release on bond. <u>See</u> 18 U.S.C. § 2332b(g)(5)(B)(i) (defining a "Federal crime of terrorism" to mean "an offense that . . . is a violation of . . . 2339D (relating to military-type training from a foreign terrorist organization)").

Indeed, as set forth above, Congress recognized the seriousness of this offense by specifically enumerating it among those offenses that carry a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond. Even where a defendant can rebut this presumption, the Court is still required to give some weight to the presumption in the detention analysis, "keeping in mind that Congress has found that these offenders pose special risks" and that "a strong probability arises that no form of conditional release" will assure the defendant's return to court or adequately protect the community. <u>United States v. Martir</u>, 782 F.2d 1141, 1144 (2d Cir. 1986) (citation and internal quotation marks omitted).

Moreover, the charged offense carries a maximum sentence of 10 years' imprisonment. The prospect of a lengthy term of incarceration confirms the defendant's serious risk of flight. Moreover, the defendant's false statements to law enforcement about her military training and relationship with ISIS years after her capture, <u>see</u> Compl. ¶ 16 and <u>supra</u>, tends to show that she would be unlikely to abide by conditions of release. Instead, there is every reason to think that the defendant will make efforts to flee from accountability, including out of the United States, so that she can avoid the prospect of a lengthy prison term.

C. The Weight of the Evidence

The weight of the evidence against the defendant is strong. Documentary evidence confirms that the defendant received military-type training from ISIS—that she possessed an AK-47 assault rifle, that she received training from ISIS, that she was certified to use that rifle by ISIS's female battalion the Nusaybah Katiba, that she was authorized by ISIS to receive ammunition, and that she believed in ISIS's mission, given the defendant's voluntary act to receive military-type training as a woman. The defendant's relationship to ISIS is confirmed by, among other things, the multiple photos of her with the ISIS flag in the background. Moreover, the defendant also admitted that the military document, which certified her completion of ISIS military training and her authorization to use the AK-47 assault rifle already in her possession, indeed referred to her by her kunya and to her husband by his kunya. Because the evidence against the defendant is strong, this factor weighs heavily in favor of a finding that the defendant is both a danger to the community and a flight risk.

D. The Defendant's History and Characteristics

The defendant's history and characteristics confirm that she is both a danger to the community and presents a substantial risk of flight. First, as discussed above, the defendant is a danger to the community because of her allegiance to ISIS and the defendant's willingness to train with and take up arms for ISIS.

Second, the defendant's history and characteristics also confirm that she presents a substantial risk of flight. The defendant left the United States in 2016 with members of her family, many of whom also were captured or surrendered to forces opposed to ISIS in early 2019. The defendant has limited family in the United States and, given her immediate family's residence in ISIS-controlled territory, there is no reason to think that her immediate family would serve to ensure her return to Court or her compliance with the Court's directives, or to mitigate her risk of harming the community. To the contrary, if anything, given the charges, she and her family may decide to flee together to prevent the defendant from being held accountable in Court and to avoid the substantial prison sentence she faces. In short, the defendant has a powerful incentive to flee from prosecution rather than face conviction at trial. Accordingly, the government respectfully submits that the defendant represents a substantial risk of flight if released on bond.

E. The Danger to the Community Posed by the Defendant's Release

Finally, as already discussed above, the defendant poses a significant danger to the community if she were released on bond. The defendant sought out and received military-type training from ISIS, a ruthless, violent terrorist organization, and is sympathetic to ISIS's cause. ISIS has recently called for attacks on the United States, and releasing to the community an individual who received military-type training as an adult and who believes in ISIS's cause poses an extreme risk to the community.

IV.      Conclusion

         For the foregoing reasons, the defendant should be detained pending trial.  The defendant is charged with an extremely serious offense, which carries a presumption of detention, and faces a potential sentence of 10 years' imprisonment.  The government respectfully submits that no condition or combination of conditions will assure the safety of the community, the defendant's return to Court, or her compliance with the Court's directives, and the Court should thus enter an order of detention pending trial.

                                               Respectfully submitted,

                                               BREON PEACE
                                               United States Attorney

                                By:    /s/ Amanda Shami
                                               Amanda Shami
                                               Assistant U.S. Attorney
                                               (718) 254-7528

cc:      Clerk of Court (by Email)
          Samuel Jacobson, Esq. (by Email)